UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SALVADOR CONCEPCION,                  :
    *Plaintiff*,                              :
                                        :
        v.                                     :     Case No. 3:20-cv-172 (SVN)
                                          :
E. GREEN, ET AL.,                      :
    *Defendants*.                             :

**INITIAL REVIEW ORDER**

Plaintiff Salvador Concepcion was incarcerated at Osborn Correctional Institution ("Osborn") when he filed this action. In July 2020, Plaintiff notified the Court that prison officials had discharged him from Osborn and that he resided in Hartford, Connecticut. *See* Notice, ECF No. 10. Plaintiff currently resides in Vernon, Connecticut. *See* Notice, ECF No. 12.

Plaintiff has filed a civil rights complaint against the defendants, Captains E. Green, J. Watson, and F. Lugo, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, S. Rious, and University of Connecticut ("UCONN") Correction Managed Health Care. Plaintiff contends that in 2013 and 2017, Defendants failed to protect him from assaults by another inmate. For the reasons set forth below, the Court will dismiss the Complaint in part, though certain Eighth Amendment claims may proceed.

I.     **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless

of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.    Facts

For purposes of this initial review only, the Court accepts as true all factual matters alleged in the Complaint. *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL

2

2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

The following facts are set forth in the Complaint.  On October 17, 2012, Plaintiff was admitted to the Department of Correction.  ECF No. 1 ¶ 12.  During Plaintiff's confinement at Hartford Correctional Center in 2013, Inmate Wrice harassed Plaintiff, and both he and Wrice often argued with each other.  *Id.* ¶ 14.  Plaintiff and Inmate Wrice had known and disliked each other for a long period of time before they arrived at Hartford Correctional Center.  *Id.* ¶ 13.

During an argument with Plaintiff at some point before May 15, 2013, Inmate Wrice instructed Plaintiff to "strap-up" and threatened to stab him.  *Id.* ¶¶ 18-19.  On May 15, 2013, Plaintiff informed Lieutenant Green that he and Inmate Wrice had a "street beef" and that Inmate Wrice had threatened to stab him.  *Id.* ¶ 21.  Lieutenant Green allegedly stated to Plaintiff: "all you inmates do is cry so you can get moved with your boys[.]  If Inmate (Wrice) says you both have problems with each other, then, I'm going to place [both of you] in [the] restrictive housing unit."  *Id.* ¶ 22.  Lieutenant Green allegedly did not complete an incident report documenting Plaintiff's allegations that Inmate Wrice had threatened him.  *Id.* ¶ 24.  Nor did Lieutenant Green or any other prison official prepare a profile prohibiting Plaintiff and Inmate Wrice from being confined at the same facility.  *Id.* ¶ 25.

On May 20, 2013, Plaintiff and Inmate Wrice were involved in a fight.  *Id.* ¶ 31.  At some point after this altercation, prison officials allegedly transferred both Plaintiff and Inmate Wrice to Osborn Correctional Institution ("Osborn").  *Id.* ¶¶ 26-27.

Upon his arrival at Osborn, Plaintiff claims he informed his counselor and his unit manager about ongoing threats made by Inmate Wrice.  *Id.* ¶ 26.  Neither Plaintiff's counselor

nor his unit manager created a separation profile between him and Inmate Wrice.  *Id.* ¶ 28.

In mid-May 2017, prison officials ordered Plaintiff to move to B-Block.[1]  *Id.* ¶¶ 29, 46-47.  At the time, Inmate Wrice was housed in B-Block.  *Id.* ¶ 29.  Plaintiff allegedly informed his unit manager that he would not move to B-Block because Inmate Wrice continued to threaten him.  *Id.*  Plaintiff's unit manager directed Plaintiff to report to Lieutenant Spruill's office.  *Id.* ¶ 30.  Plaintiff informed Lieutenant Spruill about his history with Inmate Wrice, the threats made against him by Inmate Wrice, and the fight that he and Inmate Wrice had been involved in at Hartford Correctional Center in 2013.  *Id.* ¶ 31.  Plaintiff asked Lieutenant Spruill to separate him from Inmate Wrice.  *Id.*  Lieutenant Spruill indicated that Captain Colon had issued the order that Plaintiff and Inmate Wrice be housed in the same unit.  *Id.* ¶ 32.  Plaintiff requested that Lieutenant Spruill contact Captain Colon regarding the risk of harm that he faced if he was housed in the same unit with Inmate Wrice.  *Id.* ¶ 33.  After escorting Plaintiff to a holding cell in the medical unit, Lieutenant Spruill spoke to Captain Colon about the situation.  *Id.* ¶ 34.

Lieutenant Spruill subsequently informed Plaintiff that Captain Colon would not have placed him and Inmate Wrice in the same housing unit if a separation profile existed and that there was no record documenting a fight between him and Inmate Wrice in May 2013.  *Id.* ¶ 35.  Lieutenant Spruill offered Plaintiff two options: (1) he could move to B-Block or (2) he could go to the restrictive housing unit for falsely reporting an incident.  *Id.* ¶ 37.  Plaintiff chose to move

---

[1]  At that time, Plaintiff was a sentenced inmate.  The State of Connecticut Judicial Branch website reflects that on June 3, 2014, a judge sentenced Plaintiff to eight years of imprisonment pursuant to his conviction for robbery in the first degree in *State v. Concepcion*, Docket No. HHD-CR12-0240688-T; a judge sentenced Plaintiff to eight years of imprisonment pursuant to his conviction for risk of injury to a child in *State v. Concepcion*, Docket No. HHD-CR13-0245937-T; and a judge sentenced Plaintiff to eight years of imprisonment pursuant to his conviction for risk of injury to a child in *State v. Concepcion*, Docket No. HHD-CR13-0245938-T.  This information may be found on the Judicial Website at: https://www.jud.ct.gov/crim.htm using the criminal docket numbers.

to a cell in B-Block.  *Id.* ¶ 38.

On May 20, 2017, during recreation, Inmate Wrice allegedly threatened to stab Plaintiff. *Id.* ¶¶ 39, 71.  After returning to his cell from recreation, Plaintiff observed that Inmate Wrice was holding a sharp metal object.  *Id.* ¶ 40.  Inmate Wrice walked to and entered Plaintiff's cell and stabbed Plaintiff in the left elbow.  *Id.*  The assault by Inmate Wrice caused Plaintiff to suffer nerve damage; severe pain in his left leg, ankle, and elbow; stress; nightmares; and an exacerbation of his mental health conditions, including post-traumatic stress disorder.  *Id.* ¶¶ 40, 68.

After the incident, prison officials moved Plaintiff to a cell in the restrictive housing unit. *Id.* ¶ 46.  During his confinement in the restrictive housing unit, Plaintiff claims to have submitted multiple written requests to the medical department seeking treatment for the stab wound that he had sustained to his elbow and the injury that he had sustained to his ankle.  *Id.* ¶ 54.  Plaintiff also asked a correctional officer assigned to the restrictive housing unit to arrange for him to receive medical treatment.  *Id.* ¶¶ 50-51, 56.  The officer suggested that Plaintiff continue to submit written requests for treatment to the medical department.  *Id.* ¶ 59.

On multiple dates at the end of May 2017, Plaintiff submitted requests to FOI Liaison Etchells seeking to preserve video footage of Lieutenant Spruill placing him in a holding cell in the medical unit as well as footage of the assault by Inmate Wrice.  *Id.* ¶ 47.  FOI Liaison Etchells allegedly gave him the "run around" regarding the video preservation requests and failed to inform the medical department that Plaintiff had requested medical treatment for the injuries that he had sustained during the altercation with Inmate Wrice.  *Id.* ¶¶ 48-49.

Plaintiff did not receive treatment for his injuries despite the many requests that he

submitted to the medical department.  *Id.* ¶ 55.  Plaintiff wrote to Warden Wright regarding the assault by Inmate Wrice but received no response.  *Id.* ¶ 66.

On May 30, 2017, prison officials at Osborn transferred Plaintiff to Cheshire Correctional Institution ("Cheshire").  *Id.* ¶ 60.  Upon his arrival, Plaintiff spoke to Captains Lugo and Watson regarding his issues with Inmate Wrice that dated back to 2013 and the fact that Inmate Wrice had assaulted him on May 20, 2017 at Osborn.  *Id.* ¶ 61.  Plaintiff requested that a profile be created between him and Inmate Wrice.  Neither Captain Lugo, nor Captain Watson, nor Rious investigated Plaintiff's request that a profile be created.  *Id.* ¶¶ 62-63.  They accused Plaintiff of lying about the incidents that had allegedly occurred between him and Inmate Wrice in 2013 and in May 2017.  *Id.* ¶ 64.

On October 9, 2017, at Cheshire, Plaintiff filed a grievance and a grievance appeal.  *Id.* ¶ 65.  Rious did not log, investigate, or respond to the grievance or the appeal of the grievance.  *Id.* ¶¶ 65, 75.

## III.    Discussion

Construing his claims liberally, Plaintiff alleges that:  the failure of Defendants Green and Spruill to separate him from Inmate Wrice constituted deliberate indifference to his safety in violation of the Eighth and Fourteenth Amendments; the failure of Defendants Wright, Lugo, Watson, and Rious to create a separation profile between him and Inmate Wrice after the May 2017 assault constituted deliberate indifference to his safety in violation of the Eighth and Fourteenth Amendments; the failure of Defendant Rious to investigate and respond to his grievance and grievance appeal constituted a violation of due process in violation of the Fourteenth Amendment; the failure of Defendant Etchells to arrange for him to receive medical

treatment for the injuries that he suffered during the May 2017 assault constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment; and the failure of Defendant Etchells to properly preserve relevant video footage after the May 2017 assault constituted a violation of due process in violation of the Fourteenth Amendment.  Plaintiff also contends that all Defendants engaged in conduct that constituted the torts of negligence, assault, and battery under Connecticut law.

Plaintiff sues UCONN Correction Managed Health Care in its official capacity and Green, Lugo, Watson, Spruill, Etchells, Wright, and Rious in their individual capacities. Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

## A.      Request for Declaratory Relief – All Defendants

Plaintiff seeks a declaration that Defendants violated his federal constitutional rights. Compl., ECF No. 1 at 15.  But the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

A declaration that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to protect him from assault, failing to arrange for him to receive medical treatment for his alleged injuries, and refusing to process his grievance cannot be properly characterized as "prospective" because Plaintiff does not allege how such relief would remedy any future constitutional violations by Defendants.  *See* 28 U.S.C. § 1915A(b)(1).  Accordingly, the request for declaratory relief is DISMISSED.  *See id.*

**B.      Request for Injunctive Relief – All Defendants**

Plaintiff seeks injunctive relief in the form of an order that a medical specialist employed by UCONN Correction Managed Health Care evaluate, assess, and treat the injuries he suffered during the assault by Inmate Wrice in August 2017 at Osborn and that a profile be created between him and Inmate Wrice.   The Second Circuit has held that an inmate's requests for prospective injunctive relief from correctional or medical staff in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, has been released from prison or has received the relief requested.  *See Booker v. Graham*, 974 F.3d 101, 107-08 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) ("When Khalil was released from prison, he no longer had a 'continuing personal stake' in the outcome of this action, and his claims [for declaratory and injunctive relief for alleged violations of his constitutional rights] were rendered moot.").

Plaintiff has been discharged from prison and resides in Vernon, Connecticut.  Thus, his requests seeking medical evaluation and treatment from staff members who were employed by an entity that formerly provided treatment to inmates incarcerated in Department of Correction facilities and the request that Department of Correction officials create a separation profile between Plaintiff and Inmate Wrice are moot.  Accordingly, the requests for injunctive relief are DISMISSED.  *See* 28 U.S.C. § 1915A(b)(1).

8

**C.      UCONN Correction Managed Health Care – Claim for Damages**

To state a claim under section 1983, the plaintiff must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).   A state agency is entitled to immunity under the Eleventh Amendment.  *See Bhatia v. Conn. Dep't of Child. & Fams.*, 317 F. App'x 51, 52 (2d Cir. 2009).   Moreover, a state agency is not considered a "person" within the meaning of 42 U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (state agency is not a "person" within the meaning of 42 U.S.C. § 1983).

Plaintiff describes UCONN Correction Managed Health Care as "a vendor to the Department of Correction, renduring [sic] medical treatment[] and/or care to the incarcerate population of the CT-DOC."  Compl., ECF No. 1 at 3.  In 2017, when Plaintiff was assaulted by Inmate Wrice, Correction Managed Health Care was "a division of a state agency, the University of Connecticut Health Center."[2]  *Jolley v. Corr. Managed Health Care*, No. 3:04-cv-1582 (RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009), *aff'd*, 375 F. App'x 67 (2d Cir. 2010). As a division of a state agency, UCONN Correction Managed Health Care is entitled to immunity under the Eleventh Amendment.  *Bhatia*, 317 F. App'x at 52 ("The named defendant, as a state agency, is not susceptible to liability under section 1983, . . . because state agencies are entitled to Eleventh Amendment immunity." (citing *Will*, 491 U.S. at 70-71 and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  *See also Mancuso v. N.Y. State Thruway*

*Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (noting that a state agency is an "arm of the State").

Additionally, UCONN Correction Managed Health Care is not considered to be a person subject

to suit under section 1983. *See Gaby v. Bd. of Trs. of Cmty. Tech. Colls.*, 348 F.3d 62, 63 (2d

Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of

trustees are not persons within the meaning of section 1983); *Walker v. State of Connecticut*, No.

06cv165(SRU), 2006 WL 1981783, at *2 (D. Conn. Mar. 15, 2006) (dismissing action against

the University of Connecticut Health Center Correctional Managed Unit under section 1983

because it was not a "person" within the meaning of the statute).   The claims for damages

asserted against UCONN Correction Managed Health Care are therefore dismissed.   *See* 28

U.S.C. § 1915A(b)(1).

All claims against UCONN Correction Managed Health Care are thus DISMISSED, and

the Clerk is directed to terminate it from this action.

### D.   Fourteenth Amendment – Individual Capacity Claims

Plaintiff contends that Defendants Green, Lugo, Spruill, Wright, Etchells, and Rious were

deliberately indifferent to his safety in violation of his right to due process under the Fourteenth

Amendment.   He also contends that Defendant Etchells failed to preserve video footage of the

May 20, 2017, assault and that Defendant Rious failed to process his grievance and grievance

appeal.   For the reasons set forth below, the Fourteenth Amendment claims are DISMISSED.

---

[2] As of July 1, 2018, the Department of Correction succeeded the UCONN Correctional Managed Health Care in providing medical, dental, and mental health care to inmates confined in its facilities. *See* https://portal.ct.gov/DAS/Lists/Publications?Page=6#pos=4804.1142578125 (Department of Correction 2018-2019 Annual Report at 9, 13-15) ("After twenty years of contracting out medical services for offenders [to the University of Connecticut Health Center Correctional Managed Health Care], on July 1, 2018, the Department of Correction took responsibility for the healthcare needs of the offenders under its

### 1.   Due Process – Failure to Protect from Harm

The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted). Because the Cruel and Unusual Punishment Clause of the Eighth Amendment provides protection against deliberate indifference to a prisoner's safety and health, the Court will analyze Plaintiff's allegations regarding Defendants' failure to protect him from assault and arrange for him to receive medical care for his injuries under the Eighth Amendment rather than under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (internal quotation marks omitted)).  The Fourteenth Amendment due process claim related to Defendants' deliberate indifference to Plaintiff's health and safety is therefore dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### 2.   Due Process – Grievances

Plaintiff alleges that Defendant Rious failed to investigate or respond to a grievance and grievance appeal that he filed after his transfer to Cheshire on May 30, 2017.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (claim relating to grievance procedures "confused a state-

created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'" (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (summary order) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless." (citing *Holcomb*, 337 F.3d at 224)); *Kalican v. Dzurenda*, No. 3:12-cv-1009 (SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (no constitutional right to receive response to grievance). Furthermore, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")).

Plaintiff's allegation that Rious failed or refused to investigate or properly process his Level 1 grievances and Level 2 grievance appeal in violation of the Department of Correction's administrative grievance procedures governing claims involving conditions of confinement thus does not state a claim under the Due Process Clause of the Fourteenth Amendment. *See Garcia v. Semple*, Case No. 3:18-cv-1226 (SRU), 2019 WL 5597771, at *15 (D. Conn. Oct. 30, 2019) ("[A]llegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights.") (collecting cases). Furthermore, the fact that Plaintiff may not have been able to completely or properly exhaust all available grievance procedures under

Administrative Directive 9.6 did not preclude him from seeking redress for his claims in this Court. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are "*available*" (emphasis added)); *Baltas v. Rivera*, Case No. 3:19-cv-1043 (MPS), 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) ("If prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to proceed to federal court." (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)).

The Fourteenth Amendment due process claim asserted against Defendant Rious is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### 3.     Due Process – Freedom of Information Act Requests

Plaintiff further alleges that during his confinement in the restrictive housing unit after May 20, 2017, he submitted multiple requests to FOI Liaison Etchells to preserve video footage. He contends that Etchells gave him the "runaround" regarding these requests. This allegation fails to state a claim that FOI Etchells violated Plaintiff's federally or constitutionally protected rights. *See, e.g.*, *Aviles v. Rodriguez*, No. 3:19-CV-1140 (SRU), 2019 WL 5695955, at *6 (D. Conn. Nov. 4, 2019) (dismissing claim that the prison official did not preserve video footage of incidents that gave rise to claims of deliberate indifference to health and safety "for failure to state a claim upon which relief may be granted" because plaintiff had not alleged how official's failure "to respond to his requests to preserve the video footage of the incidents violated his federally or constitutionally protected rights").

The claim that Defendant Etchells violated Plaintiff's Fourteenth Amendment rights by

failing to preserve video footage in response to requests submitted in late May 2017 is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### E.   Eighth Amendment – Individual Capacity Claims

Plaintiff alleges that during his confinement at Hartford Correctional Center, Lieutenant Green was deliberately indifferent to his safety; that during his confinement at Osborn, Defendants Wright and Spruill were deliberately indifferent to his safety; and that during his confinement at Cheshire after May 30, 2017, Defendants Lugo and Watson were deliberately indifferent to his safety.  Plaintiff alleges that Defendant Etchells was deliberately indifferent to his medical needs during his confinement in the restrictive housing unit after the May 20, 2017 assault.

#### 1.   Deliberate Indifference to Safety

It is well-established that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody" and "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted); *see also Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (same); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." (citation omitted)).

To state a claim of failure to protect or deliberate indifference to safety under the Eighth Amendment, an inmate must allege that he or she is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component), and that the prison official acted with a "sufficiently culpable state of mind," which in "prison-conditions cases" is "one

14

of deliberate indifference to inmate health or safety," (the subjective component).  *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted).  To meet the subjective component, an inmate must assert facts to show that the prison officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *Id.* at 834, 837.

        a.       **Lieutenant Green**

Plaintiff alleges that in 2013, Lieutenant E. Green failed to document threats Inmate Wrice made to Plaintiff; failed to create a profile separating him from Inmate Wrice after those threats; and failed to protect him from a fight that he and Inmate Wrice engaged in on or about May 20, 2013, at Hartford Correctional Center.  Given that Lieutenant Green's alleged inactions occurred in 2013, the Court examines whether this claim falls within the statute of limitations.

In Connecticut, the three-year limitations period set forth in Conn. Gen. Stat. § 52-577 is applicable to claims asserted under section 1983.  *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994) ("Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations.").  The date on which a section 1983 claim accrues, however, is a "question of federal law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  In determining whether an action is barred by the statute of limitations, a federal cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* (internal quotation marks and citations omitted).  Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although Plaintiff's interactions with Lieutenant Green occurred in 2013, it is not clear from the face of the complaint when Plaintiff's claim actually accrued, *i.e.,* when he learned that Lieutenant Green had not documented the threats from Inmate Wrice and had not created a profile to separate Plaintiff from Wrice.  Construing his complaint liberally, as a Court must for a *pro se* plaintiff, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), Plaintiff claims he first learned that no report had been written of the alleged May 20, 2013, fight and that no profile had been created to separate him from Inmate Wrice when Plaintiff was transferred to Osborn and requested of Lieutenant Spruill that he be kept separate from Inmate Wrice at Osborn.  Plaintiff alleges that Lieutenant Spruill told him at that time that there was no record of Plaintiff and Inmate Wrice fighting at Hartford Correctional Center and no profile requiring Plaintiff to be separated from Inmate Wrice.  Because "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Hogan*, 738 F.3d at 518 (internal quotation marks and citation omitted), the date of Plaintiff's conversation with Lieutenant Spruill is essential to determining whether Lieutenant Green's alleged 2013 failures to document the threats/fight and create a separation profile falls within or outside of the applicable statute of limitations.  This Eighth Amendment claim will proceed against Lieutenant Green for further development of the factual record.

### b.   Spruill

Plaintiff alleges that in mid-May 2017, he informed Lieutenant Spruill about the prior issues and arguments between himself and Inmate Wrice, including the fight that had occurred in May 2013 at Hartford Correctional Center, and the fact that Inmate Wrice had threatened to stab him.  According to Plaintiff, Lieutenant Spruill checked with Captain Colon who indicated that

16

no separation profile existed between Plaintiff and Inmate Wrice and no report existed documenting a fight between Plaintiff and Inmate Wrice in May 2013 at Hartford Correctional Center. Lieutenant Spruill allegedly offered Plaintiff the options of being housed in the unit where Inmate Wrice resided or being placed in restrictive housing for making a false report. Plaintiff chose to move into the unit where Inmate Wrice resided. On May 20, 2017, five days after Plaintiff's transfer to Inmate Wrice's housing unit in Osborn, Wrice allegedly threatened Plaintiff, stabbed him in the elbow, and caused him to suffer an injury to his ankle and leg. These claims about Lieutenant Spruill's alleged failures are sufficient to meet both the objective and subjective components of the failure to protect/deliberate indifference to safety standard. This Eighth Amendment claim will proceed against Lieutenant Spruill in his or her individual capacity.

### c.  Warden Wright

Plaintiff alleges that after the assault, he was placed in a cell in the restrictive housing unit at Osborn. At some point, Plaintiff sent a letter to Warden Wright regarding the assault. Plaintiff received no response from Warden Wright. Ten days after the assault, prison officials transferred Plaintiff to Cheshire. Plaintiff contends that Warden Wright did not investigate the incident or create a separation profile between Plaintiff and Inmate Wrice after the assault.

For purposes of this review, the Court assumes that Warden Wright received Plaintiff's letter or request regarding the assault. The Court concludes that Plaintiff's allegations that Warden Wright failed to create a separation profile between Plaintiff and Inmate Wrice after he became aware of the May 20, 2017, incident states a plausible claim of deliberate indifference to a serious risk of harm to Plaintiff's future health. The Court will permit this Eighth Amendment

failure to protect/deliberate indifference to safety claim to proceed against Defendant Wright for further development of the record.

### d.     Captain Watson, Captain Lugo, and Rious

Plaintiff alleges that upon his arrival at Cheshire on May 30, 2017, he made Captains Lugo and Watson aware that he and Inmate Wrice had argued on multiple occasions at Osborn and that Inmate Wrice had stabbed him on May 20, 2017.  Plaintiff requested that Lugo and Watson create a separation profile between him and Inmate Wrice.  Plaintiff alleges that he made Rious aware of the need for a separation profile in a grievance and a grievance appeal that he filed regarding the May 20, 2017, assault that had occurred at Osborn.  Plaintiff contends that neither Lugo, nor Watson, nor Rious investigated his request for a separation profile or created a separation profile between him and Inmate Wrice.

Although Plaintiff does not allege that Inmate Wrice was transferred from Osborn to Cheshire or that Inmate Wrice subsequently threatened to harm him or in fact harmed him during his confinement at Cheshire, "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health[.]'" *Farmer*, 511 U.S. at 843 (quoting *Helling*, 509 U.S. at 35).  Plaintiff's allegations suggest that Captains Lugo and Watson and Rious, by failing to create a separation profile between Plaintiff and Inmate Wrice, potentially exposed Plaintiff to the risk of serious damage to his future health, if Plaintiff and Inmate Wrice were to be housed together again.  Thus, the Court will permit this failure to protect/deliberate indifference to safety claim as asserted against Defendants Lugo, Watson, and Rious, to proceed for further development of the record.

## 2.   Deliberate Indifference to Medical Needs

The Eighth Amendment prohibits deliberate indifference by medical providers and prison officials to an inmate's serious medical and dental needs.  *See Estelle*, 429 U.S. at 104-05 (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").  To state a claim of deliberate indifference to a medical need, an inmate must meet two elements.

The first element requires the inmate to allege facts that demonstrate that his medical need or condition is objectively serious.  *See Hill v. Curcione*, 657 F.3d 116, 122-23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain" (internal quotation marks and citation omitted)). In determining whether a condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

To meet the second element of an Eighth Amendment deliberate indifference claim involving a medical condition, an inmate must allege that the official acted with the requisite *mens rea*, that is, that the prison official or medical provider was actually aware that his actions or inactions would create a substantial risk of serious harm to the inmate.  *See Hill*, 657 F.3d at 122 (citation omitted).  Mere negligent conduct, however, does not constitute deliberate indifference.  *Id.* at 123 ("[A] complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." (quoting *Estelle*, 429 U.S. at 106)).

Plaintiff alleges that during the May 20, 2017, assault at Osborn, he suffered a stab wound to his left elbow and unspecified injuries to his left ankle and leg. He contends that he suffered extensive nerve damage and that the injuries caused him severe pain. In addition to informing a correctional officer in the restrictive housing unit that he required medical treatment, Plaintiff states that he submitted requests to FOI Liaison Etchells on four days in late May 2017 that included allegations regarding the severity of his injuries and need for treatment. Plaintiff alleges that Etchells made no attempt to arrange for him to receive medical treatment for his injuries. These allegations are sufficient at this stage of the proceedings to state a plausible claim that Defendant Etchells was deliberately indifferent to Plaintiff's medical needs during his confinement in the restrictive housing unit after the altercation with Inmate Wrice. This Eighth Amendment claim will proceed against Defendant Etchells in his or her individual capacity for further development of the record.

### F.      State Law Claims

Plaintiff invokes this Court's supplemental jurisdiction over three state law tort claims, assault, battery, and negligence. It is unclear whether Plaintiff asserts these claims against all Defendants.

#### 1.      Assault and Battery

Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson*, 277 Conn.

319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)).  "Liability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) the other is thereby put in such imminent apprehension." *Id.*  To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972).

Plaintiff includes no facts to suggest that any defendant engaged in conduct that constituted an assault or a battery.  Accordingly, the state law assault and battery claims are DISMISSED as failing to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### 2. Negligence

A plaintiff must plead the elements of "duty, breach, causation, and actual injury" to state a claim of negligence under Connecticut law. *Edwards v. McMillen Cap., LLC*, No. 3:18-CV-346 (SRU), 2021 WL 1178399, at *13 (D. Conn. Mar. 29, 2021) (citing *Radesky v. First Am. Title Ins. Co.*, No. 3:02CV1304 (JBA), 2003 WL 22119183, at *5 (D. Conn. Aug. 29, 2003)).

The claims seeking injunctive or declaratory relief from UCONN Correction Managed Health Care in its official capacity and for the alleged negligent conduct of Captains Watson and Lugo, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, and Rious in their official capacities are barred by the Eleventh Amendment.  *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of the Connecticut Constitution and state law, those claims are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine." (internal quotation marks omitted)).  The claims seeking injunctive and declaratory relief for the alleged negligence of

21

Captains Watson, Lugo and Green, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, and Rious are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Plaintiff contends that Wright, Spruill, Etchells, Lugo, Watson, Green, and Rious, in their individual capacities, engaged in negligent conduct. Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003).

Furthermore, "[a]ny person having a complaint for [ ] damage or injury" not caused by wanton, reckless or malicious conduct must "present it as a claim against the state" to the State Claims Commissioner who may authorize suit against the state or the state official. Conn. Gen. Stat. §§ 4-160(a), 4-165(a); *see also Miller*, 265 Conn. at 319, 828 A.2d at 561-62 (Connecticut General Statutes "§ 4–165 makes clear that the remedy available to plaintiffs who have suffered harm from the negligent actions of a state employee who acted in the scope of his or her employment must bring a claim against the state under the provisions of this chapter, namely, chapter 53 of the General Statutes, which governs the office of the claims commissioner." (internal quotation marks omitted)). When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted . . . ." Conn. Gen. Stat. § 4-160(c). Plaintiff has not alleged that he filed a claim with the State Claims Commissioner or that he received the required authorization to file suit against the State and its officials for their negligent conduct.

22

Accordingly, the state law negligence claim asserted against Captains Watson, Lugo, and Green, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, and Rious in their individual capacities for monetary damages is barred by statutory immunity under Connecticut General Statutes § 4-165 and is DISMISSED. *See* 28 U.S.C. § 1915A(b)(2).

**ORDERS**

The Court enters the following orders:

**(1)** The claims seeking declaratory and injunctive relief from all Defendants; the claims for damages asserted against UCONN Correction Managed Health Care; all Fourteenth Amendment due process claims asserted against Captains Watson and Lugo, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, and Rious; and the state law assault and battery and negligence claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims asserted against UCONN Correction Managed Health Care have been **DISMISSED**. The Clerk is directed to terminate Defendant UCONN Correction Managed Health Care from the action.

The alleged Eighth Amendment failure to protect/deliberate indifference to safety claim related to the failure to document the threats from Inmate Wrice to Plaintiff and to create a separation profile between Plaintiff and Inmate Wrice at Hartford Correctional Center will proceed against Lieutenant Green in her individual capacity; the alleged Eighth Amendment failure to protect/deliberate indifference to safety claim related to the assault on Plaintiff by Inmate Wrice that occurred on May 20, 2017, at Osborn will proceed against Lieutenant Spruill and Warden Wright, in their individual capacities; the alleged Eighth Amendment failure to protect/deliberate indifference to safety claim related to the refusal to create a separation profile between Plaintiff and Inmate Wrice at Cheshire will proceed against Captains Watson and Lugo

23

and Rious in their individual capacities; and the Eighth Amendment deliberate indifference to medical needs claim will proceed against FOI Liaison Etchells, in his or her individual capacity.

(2)     The Clerk shall verify the current work addresses of Lieutenant Green, Captain Watson, Captain Lugo, Lieutenant Spruill, FOI Liaison Etchells, Warden Wright, and Rious and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the requests.  If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Spruill, Wright, Lugo, Watson, Rious, and Etchells shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Amended pleadings shall be governed by Federal Rule of Civil Procedure 15.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order, that is, **June 15, 2022**. Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed by **August 15, 2022**.

(7)     If Plaintiff changes his address at any time during the litigation of this case, Local

24

Rule 83.1(c)2 provides that Plaintiff MUST notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(8)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

(9)    The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

IT IS SO ORDERED.

_____/s/_____
Sarala V. Nagala, U.S.D.J.

Dated:          December 17, 2021
                Hartford, Connecticut